UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHUNLIAN ZHU,<br><br>        Petitioner,<br><br> v.<br><br>SEATTLE ICE FIELD OFFICE DIRECTOR,<br><br>        Respondent. | Case No. C21-255-TSZ-SKV<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Chunlian Zhu is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking to obtain release from detention or a bond hearing. Dkt. 1. The Government has filed a return memorandum and motion to dismiss which is currently ripe for review. Dkt. 7. Petitioner has filed a response to the Government's motion to dismiss (Dkt. 11), the Government has filed a reply in support of its motion (Dkt. 13), and Petitioner has filed a surreply (Dkt. 15)[1]. The

---

[1] Petitioner asserts in his surreply that the Government's reply brief and an accompanying declaration should be stricken because they were filed on the date the Government's motion to dismiss was noted for

REPORT AND RECOMMENDATION
PAGE - 1

Government also recently filed an update on the status of Petitioner's removal. *See* Dkts. 20, 21.

The Court, having considered the parties' briefs and the exhibits submitted in support thereof, concludes that the Government's motion to dismiss should be granted, that Petitioner's federal habeas petition and this action should be dismissed.

BACKGROUND

Petitioner, a native and citizen of China, was admitted to the United States through Los Angles, California in October 2010, as a lawful permanent resident. Declaration of Christopher L. Sica (Sica Decl.), Dkt. 8, ¶ 3; Declaration of James C. Strong (Strong Decl.), Dkt. 9, Ex. A at 2. In December 2015, Petitioner was convicted in the Superior Court of California, County of Los Angeles, on a charge of assault with a deadly weapon. Sica Decl., ¶ 4; Strong Decl., Ex. B. In September 2019, Petitioner was convicted in the Superior Court of California, County of Los Angeles, on a charge of possession for sale of a controlled substance. Sica Decl., ¶ 6; Strong Decl., Ex. B. As part of the disposition for Petitioner's second conviction, Petitioner's probation in his prior assault case was revoked and he was sentenced to an additional term of imprisonment to be served concurrently with the term of imprisonment imposed for the drug charge. *See id*.

On August 8, 2020, Petitioner was released into ICE custody in Bakersfield, California, and he was transferred to the NWIPC. Sica Decl., ¶¶ 7, 8. On the same date, Petitioner was served with a Notice to Appear ("NTA"), charging him as inadmissible pursuant to 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) (conviction for a crime involving moral turpitude) and 1182(a)(2)(A)(i)(II) (conviction for a controlled substance offense). *Id.*, ¶ 7; Strong Decl., Ex. C. On August 20,

---

consideration which Petitioner claims was "not authorized under currently prevailing federal regulations." *See* Dkt. 15 at 1-2. However, the Court's Order directing service of Petitioner's petition on the Government and directing the Government file a return specifically provides that the Government may file a reply brief on the date the matter is noted for consideration. *See* Dkt. 4 at 2. The Government's reply brief was properly filed and will not be stricken.

2020, Petitioner was served with an amended NTA which included an additional charge of inadmissibility pursuant to 8 U.S.C. § 1182(a)(2)(C) (reason to believe alien is illicit trafficker in a controlled substance). Sica Decl., ¶ 9; Strong Decl., Ex. D. Petitioner appeared before an immigration judge ("IJ") for removal proceedings on October 20, 2020. Sica Decl., ¶ 11; Strong Decl., Ex. E. At that time, Petitioner conceded the charges of removability and the IJ ordered Petitioner removed from the United States to China. *See id*. Petitioner waived his right to appeal the IJ's decision, and his removal order became administratively final on October 20, 2020. *Id*. The Government thereafter had 90-days to effectuate Petitioner's removal. 8 U.S.C. § 1231 (a)(1)(A). Because Petitioner has a Chinese passport that is valid until November 2028, the Government does not need to obtain a travel document for Petitioner in order to effectuate his removal. Sica Decl., ¶ 23.

On December 19, 2020, the Chinese government imposed significant restrictions on the travel of individuals from the United States to China relating, in particular, to COVID-19 testing requirements. Sica Decl., ¶ 12. Among those requirements was proof of a negative polymerase chain reaction ("PCR") or IgM Serum Antibody ("Antibody") COVID test, from an approved provider, taken within two days of travel. *See id*., ¶¶ 12, 14. An additional requirement was that the results of the requisite COVID test be electronically transmitted through an approved mobile application ("WeChat"). *Id*., ¶ 12. These restrictions were to go into effect on December 23, 2020. *Id*., ¶ 12.

On December 20, 2020, ICE scheduled Petitioner for removal via a commercial flight departing on February 4, 2021. *Id*., ¶ 13. On January 5, 2021, the Chinese government released a list of approved providers for the required COVID tests, but the only provider on the list was an entity with which ICE did not have a contractual relationship. *Id*., ¶ 14. Because of ICE's

REPORT AND RECOMMENDATION
PAGE - 3

lack of a contractual relationship with the approved provider, and because ICE did not have authorization to transmit COVID test results via WeChat, Petitioner was not removed as scheduled on February 4, 2021. *Id*., ¶¶ 17, 18.

ICE subsequently learned that China may begin accepting different testing options and it therefore continued to investigate whether it would be able to meet China's requirements for repatriation. *See id*., ¶¶ 19, 20, 21, 22. In April/May 2021, ICE located what it believed to be an approved provider who could complete the requisite COVID testing locally. However, ICE was still unable to schedule a removal flight for Petitioner because the Chinese government requires that testing be completed in the departure city of a direct flight to China, and ICE could not locate any direct flights from Seattle to mainland China. *See id*.; Second Declaration of Christopher L. Sica (Sica Decl. II), Dkt. 14, ¶¶ 4, 5.

On July 30, 2021, the Court ordered the Government to provide an update on its efforts to remove Petitioner. Dkt. 19. In response to that Order, the Government advised that arrangements have now been made which meet the Chinese government's COVID testing requirements. Third Declaration of Christopher L. Sica (Sica Decl. III), Dkt. 21, ¶ 4. In particular, the Government represents that Petitioner is to be on a direct flight to China, departing from Los Angeles, California, "before August 20, 2021," and that ICE has identified a COVID testing location close to Los Angeles International Airport that is listed as an approved provider on the website for the Chinese Consulate in Los Angeles. *Id*.

During Petitioner's time in ICE custody, ICE has completed both a 90-day Post Order Custody Review ("POCR") of Petitioner's detention and a 180-day POCR. In the 90-day POCR, completed in January 2021, ICE determined that Petitioner would remain in custody because he had not demonstrated that, if released, he would not pose a danger to the community. Sica Decl.,

¶ 15; Strong Decl., Ex. F.  In the 180-day POCR, completed in May 2021, ICE determined that Petitioner would remain detained because ICE had reason to believe that there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future.  Sica Decl. II, ¶ 6.

## DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, such as Petitioner, who have been ordered removed.  Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. §§ 1231(a)(2), (a)(1)(B).  In this case, the removal period began on the date Petitioner's removal order became administratively final, October 20, 2020.  *See* 8 U.S.C. § 1231(a)(2)(B)(i).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are inadmissible under § 1182, or to release them on supervision.  8 U.S.C. § 1231(a)(6).  As noted above, ICE conducted reviews of Petitioner's detention status in January 2021 and in May 2021 and determined both times that Petitioner should remain in custody.  *See* Sica Decl., ¶ 15; Sica Decl. II, ¶ 6.  Because Petitioner is inadmissible under § 1182, his detention comports with the statute.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely.  The Supreme Court has held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention.  *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States.  *Id*.  "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future, the Government must respond with evidence sufficient to rebut that showing." *Id*. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*.

In this case, the six-month presumptively reasonable period expired in April 2021, approximately four months ago. Petitioner argues in his response to the Government's motion to dismiss that the Government has improperly shifted the burden to him and that there is no likelihood his removal will be effectuated in the reasonably foreseeable future. Dkt. 11 at 1. Petitioner goes on to argue that it is more likely China will increase its travel restrictions given the state of the pandemic, rather than, as the Government hopefully suggests, relax those requirements in light of the increased availability of vaccines and more robust testing. *See id*. at 2; Dkt. 7 at 5. Petitioner's arguments do not establish that his detention has become indefinite.

The Ninth Circuit has explained that detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country. *Diouf v. Mukasey* (*Diouf I*), 542 F.3d 1222, 1233 (9th Cir. 2008). In this case, there is no evidence that China has refused to accept Petitioner, or that it has implemented a blanket ban on repatriations. There is likewise nothing in the record to suggest that Petitioner's removal is barred by the laws of this country. At this juncture, it appears the only impediment to Petitioner returning to China is ICE's ability to comply with the COVID testing protocols established by the Chinese government and the Government, in its most recent submission, indicates that ICE now has a plan in place which will allow it to remove Petitioner in the very near future. Dkt. 20. Petitioner has not made the requisite showing that there is good reason to believe that there is no significant likelihood he will be removed in the reasonably foreseeable future and, thus, he has not demonstrated that he is entitled to federal habeas relief.

REPORT AND RECOMMENDATION
PAGE - 6

|   |   |
|---|---|
| 1 | Petitioner also requests a bond hearing.  The Government argues that this request should |
| 2 | be denied.  Dkt. 7 at 6-7.  The Government notes that though Petitioner argues in his petition that |
| 3 | he should be given a bond hearing under 8 U.S.C. §§ 1226(a) or 1226(c), Petitioner is not |
| 4 | detained pursuant to § 1226.  *Id*. at 6.  Rather, Petitioner is detained pursuant to 8 U.S.C. § |
| 5 | 1231(a)(2).  *Id*.  The Ninth Circuit has held that noncitizens subject to prolonged detention under |
| 6 | § 1231(a)(6) are entitled to a bond hearing if removal is not imminent.  *Diouf v. Napolitano* |
| 7 | (*Diouf II*), 634 F.3d 1081, 1082 (9th Cir. 2011); *see also Aleman Gonzalez v. Barr*, 955 F.3d |
| 8 | 762, 765-66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding).  The Government argues that the |
| 9 | delay in Petitioner's removal caused by the current pandemic-related restrictions imposed by |
| 10 | China does not mean his removal is not imminent.  Dkt. 7 at 6.  And, indeed, the Government |
| 11 | recently apprised the Court that it now has a plan in place to comply with those restrictions and it |
| 12 | represents that Petitioner is likely to be removed later in the month of August, perhaps within the |
| 13 | next week.  *See* Dkt. 20; Sica Declaration III, ¶ 4.  Based upon this representation, the Court |
| 14 | must conclude that Petitioner's removal is, indeed, imminent and, thus, Petitioner is not entitled |
| 15 | to a bond hearing pursuant to *Diouf II*. |

CONCLUSION

Based on the foregoing, this Court recommends that the Government's motion to dismiss (Dkt. 7) be GRANTED, and that Petitioner's federal habeas petition (Dkt. 1) and this action be DISMISSED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion

REPORT AND RECOMMENDATION
PAGE - 7

calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 3, 2021**.

DATED this 17th day of August, 2021.

*[signature]*

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8